# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1802 | **DATE** | 5/13/2002 |
| **CASE TITLE** | Murphy vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, defendant City of Chicago's motion for summary judgment (19) is granted in part and denied in part, and its motion to strike pages of plaintiff's brief is denied. Plaintiff Murphy's motion for summary judgment (20) is denied. The case is set for a status hearing on 5/22/02 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 14 2002 | |
| ✓ | Docketing to mail notices. | | date docketed | 36 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | U.S. DISTRICT COURT CLERK  02 MAY 13 PH 5:11 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KEVIN MURPHY,                          )
                                       )
        Plaintiff,          )
                                       )
v.                                     )     Case No.  01 C 1802
                                       )
CITY OF CHICAGO,                       )
                                       )
        Defendant.          )

DOCKETED
MAY 1 4 2002

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Kevin Murphy, a Chicago police officer, has sued the City of Chicago under 42 U.S.C. § 1983, alleging that the City deprived him of property without due process of law. This case is now before the Court on the parties' cross-motions for summary judgment. For the reasons outlined below, Murphy's motion for summary judgment is denied, and the City's motion for summary judgment is granted in part and denied in part.

### Facts

Murphy joined the Chicago Police Department in January 1977 and was employed by the CPD as a police officer on active duty until December 1998. On December 17, 1998, the CPD placed Murphy on paid medical leave, pending the outcome of a psychological evaluation requested by Murphy's district commander, John Minogue. Commander Minogue recommended that Murphy be placed on leave pending evaluation based on a large number of complaints registered against him for mistreatment of citizens and fellow officers.

In January 1999, Murphy was evaluated by Dr. Kathleen Campione, a clinical

psychologist with the Center for Applied Psychology, an entity that performs psychological evaluations for the CPD. Dr. Campione concluded that Murphy was unfit for duty as a Chicago police officer due to "intense interpersonal conflicts" with the CPD and "feelings of being treated unfairly by superiors," which "are likely to make it difficult for [Murphy] to function in a fully professional manner." Murphy underwent a follow-up evaluation in March 1999, which also resulted in a finding of unfitness. Murphy challenged this finding via a medical grievance which he submitted pursuant to the provisions of the Collective Bargaining Agreement ("CBA") between the City and the Fraternal Order of Police, the union representing Chicago police officers. As part of the grievance process, Murphy was evaluated by a Fitness for Duty Panel consisting of three psychologists. The panel found Murphy unfit for duty in a report issued in August 1999. The Panel recommended that Murphy continue therapy and that he be re-evaluated three months from the date of its report.

Shortly after the Fitness for Duty Panel's August 1999 decision, Murphy's paid medical leave time expired. Accordingly, he applied for disability benefits with the Retirement Board of the Policemen's Annuity and Benefit Fund, commonly referred to as the Pension Board. In connection with Murphy's application for benefits, doctors for the Pension Board examined Murphy, and the Board held a hearing on November 23, 1999.

In December, 1999, after Murphy's hearing before the Pension Board, but before the Board decided his case, the Fitness for Duty Panel conducted its three month follow-up evaluation of Murphy. At that time, it again concluded that Murphy was unfit for duty.

On January 19, 2000, the Pension Board issued its finding on Murphy's claim for disability benefits; it determined that Murphy was not disabled and was therefore fit for duty as a

-2-

Chicago police officer. The Pension Board accordingly denied Murphy's request for disability benefits. On March 24, 2000, the CPD informed Murphy that he was still considered unfit for duty. Murphy remains on an involuntary unpaid leave of absence.

On March 14, 2001, Murphy sued the City under 42 U.S.C. § 1983, alleging that the City deprived him of a property interest in employment with the CPD without due process of law. Murphy alleges that his due process rights were violated because the CPD failed to give him the opportunity to demonstrate his fitness for duty after the Pension Board denied his disability claim and because he received double punishment for a single offense. He seeks declaratory relief and compensatory damages.

### Discussion

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, courts must construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). When cross motions are filed, we apply the same standard to each motion. *E.g., Stimsonite Corp. v. Nightline Markers, Inc.*, 33 F. Supp. 2d 703, 705 (N.D. Ill. 1999).

Both the City and Murphy have moved for summary judgment. They address the following issues in their submissions: (1) whether Murphy had adequate opportunity to demonstrate his fitness for duty; (2) whether Murphy states a claim against the City for municipal liability under Section 1983; (3) whether Murphy incurred "double punishment" for certain

-3-

offenses against his fellow officers; and (4) whether Murphy's claims are barred by the applicable two-year statute of limitations.

We can easily dispense with the last issue. Although the Court already ruled, in connection with the City's motion to dismiss, that Murphy's claims are not time-barred, *see Murphy v. City of Chicago*, No. 01 C 1802, 2001 WL 849744 (N.D. Ill., July 30, 2001), the City again raises this issue in its summary judgment papers. Murphy is challenging actions that took place following the Pension Board's January 2000 decision. He filed this action on March 14, 2001, and his claims therefore are timely.

We thus turn to the merits of Murphy's claims. The due process clause of the fourteenth amendment forbids a state from depriving an individual of life, liberty, or property without due process of law. U.S. CONST. AMEND. XIV. The parties do not dispute that Murphy has a property interest in continued employment with the CPD that is protected by the due process clause. Accordingly, Murphy cannot be deprived of that interest without the opportunity to be heard. *See Buttitta v. City of Chicago,* 9 F.3d 1198, 1204 (7th Cir. 1993) (Chicago police officer removed from active duty due to injury, but found not disabled by Pension Board, had a property interest in being returned to the police department for the opportunity to demonstrate his fitness). The dispute concerns whether Murphy was afforded the requisite opportunity to be heard.

The City first argues that Murphy is not entitled to any additional "process" because he had the opportunity to demonstrate his fitness for duty in December 1999 when the Fitness for Duty Panel conducted its three month follow-up review of Murphy. At that time, the Panel evaluated Murphy and determined that he was still unfit for duty. The City further asserts

-4-

that there is no evidence that Murphy's condition changed from December 1999 until January 19, 2000 when the Pension Board issued its decision. *See* Defendant's Response to Plaintiff's Motion for Summary Judgment at 4. The City thus argues that Murphy "received all of the process due him under *Buttitta*," *id.* at 3, and it emphasizes that the CPD is not required to reinstate Murphy simply because the Pension Board found him to be fit for duty.

It is true that *Buttitta* does not require the CPD to accept the Pension Board's findings that Murphy was fit for duty. *Buttitta*, 9 F.3d at 1204 ("nothing ... requires the [CPD] either to accept the Board's conclusion that the disability has ceased or to immediately place the officer on active duty"). However, as outlined in our earlier opinion, *Buttitta* required the CPD to afford Murphy due process *after* the Pension Board denied his claim for disability benefits. *See id.* (officers have a property interest in "being returned to the department for an opportunity to demonstrate their fitness for active duty" after the Pension Board's finding of no disability). Therefore, the fact that Murphy received some "process" prior to the Pension Board's January 19, 2000 decision does not defeat his claim. Further, the City's assertion that Murphy's condition did not change between December 1999 and January 2000 does not thwart Murphy's due process claims: *Buttitta* does not allow the CPD to leave an officer in limbo after the Pension Board denies the officer's claim for benefits; if the CPD denies reinstatement, "the [Pension] Board must continue payment of the [disability] benefit." *Id.* at 1204. Murphy was left in precisely the type of no-man's-land that both state law and *Buttitta* were designed to avoid.

The City argues that Murphy bore the burden of asking for reinstatement after the Pension Board found that he was not disabled and that having failed to do so, Murphy cannot claim that he was denied due process. It is true that an individual's failure to invoke available

procedures can doom his due process claim. *E.g., Cliff v. Board of School Commissioners*, 42

F.3d 403, 413-14 (7th Cir. 1994); *Charles J. Koen & Associates v. City of Cairo*, 909 F.2d 992,

1001 (7th Cir. 1990). But in this case no procedure existed, and it was the CPD, not Murphy,

which had the burden of taking the next step. Specifically, if the CPD was determined not to

accept the Pension Board's determination that Murphy was not disabled, it was required to offer

him some mechanism to permit him to demonstrate his fitness for duty. *See Bauschard v.

Martin*, No. 91 C 7839, 1993 WL 79259, at *5 (N.D. Ill. 1993) ("[A]fter the Pension Board

denied [plaintiff] pension benefits and defendants refused to reinstate him, defendants were

required under the Due Process Clause to conduct some sort of hearing"); *see also Buttitta*, 9

F.3d at 1204 (suggesting that the burden rests with the CPD to initiate some sort of process).

Indeed, that is exactly what the CPD did in *Buttitta* – it conducted a renewed examination of the

officer before finding that he was still disabled. *Id.* at 1205. And as we have noted, *Buttitta*

further directs that if the CPD declines to reinstate an officer, then the officer is to be returned to

the Pension Board for continuation of his disability benefits. *Id.* at 1204. That did not occur

here. As a result, Murphy was left with no job *and* no disability benefits, the precise situation

that *Buttitta* was designed to avoid.

The City also contends that certain grievance procedures established by the CBA

that it claims were available to Murphy satisfied the CPD's due process obligations, but that

Murphy failed to utilize those procedures. Employee grievance procedures provided by a

collective bargaining agreement can satisfy due process. *E.g., Winston v. United States Postal

Service*, 585 F.2d 198, 209-10 (7th Cir. 1978). The question of what procedures are available to

officers under the CBA is essentially one of contract interpretation, which is ordinarily a question

of law for the Court. *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998). But the issue of the availability of grievance procedures in particular situations may give rise to an ambiguity, which would render the issue a question of fact. *Cushing v. City of Chicago*, 3 F.3d 1156, 1163 (7th Cir. 1993). In this case, however, there is no ambiguity.

When Murphy was first placed on medical leave, the process that was followed to determine whether he should be removed from active duty was the "psychological review" grievance procedure established pursuant to Section 9.4 of the CBA: examination by a psychiatrist or psychologist designed by the CPD, followed by review by a Fitness for Duty Panel consisting of three psychiatrists or psychologists. But once that procedure was concluded with the Panel's finding of unfitness, there was no opportunity under the CBA for further review; Section 9.4 provides that the Panel's determination "shall be binding." And indeed the CPD does not argue that Murphy should have proceeded under Section 9.4 after the Pension Board found that he was not disabled. Rather, it relies on Section 9.2 of the CBA. But Section 9.2 does not cover the situation in which Murphy found himself following the Pension Board's decision: it provides the "Procedures, Steps and Time Limits for *Standard Grievances*." Defendant's Motion for Summary Judgment, Exhibit G (CBA), Section 9.2 (emphasis added). Murphy did not have a "standard" grievance; his grievance, had he filed one, would have involved psychiatric issues. Unlike Section 9.4, Section 9.2 contains no procedure for resolving psychiatric or other medical issues; rather, the type of grievance it contemplates is the standard labor-management grievance that can be resolved by mediation or arbitration. Indeed, Section 9.4, on its face, provides the exclusive means for resolving grievances that concern psychiatric issues relating to an officer's removal from the force: it states that "grievances concerning involuntary removal

-7-

from active duty due to psychological or psychiatric reasons *will comply with the following procedures ....*" *Id.* Section 9.4 (emphasis added). And as we have noted, Section 9.4 provided no remedy for an officer in Murphy's situation.

In support of its argument that Section 9.2 applied to Murphy's situation, the City has offered the affidavit of CPD Commander George Rosebrock, who is in charge of the Department's Management and Labor Affairs Section. *See* Defendant's Motion for Summary Judgment, Exhibit H. In his affidavit, Commander Rosebrock summarily asserts, without explanation, elaboration, or support, that:

> [a]fter being notified on March 24, 2000 that the CPD had determined that he was not fit for duty, Murphy could have requested that the CPD allow him another opportunity to demonstrate his fitness for duty. If the CPD had refused this request, then Murphy could have grieved that refusal under Article 9, Section 9.2 of the CBA. Such a grievance would have pertained to the CPD's refusal to allow Murphy another opportunity to demonstrate his fitness for duty and would not have pertained to whether Murphy actually was fit for duty or not.

Exhibit H, ¶¶ 3, 4.[1] For his part, Murphy has submitted an equally conclusory affidavit from Thomas Pleines, General Counsel of the Fraternal Order of Police, Lodge 7, and the FOP's negotiator with respect to the CBA. Pleines states that Section 9.2 was not available to Murphy. *See* Affidavit of Thomas Pleines, ¶12.

We will consider neither of these affidavits. Interpretation of a contract starts, and usually ends, with the contract's language; "[t]he written word will prevail over the subjective understandings of the contracting parties unless the written agreement is truly ambiguous."

---

[1] In his supplemental affidavit, Rosebrock qualified these earlier statements by adding that had Murphy filed a grievance after March 24, 2000, that request would have been stayed pending the resolution of Police Board proceedings brought against Murphy for altercations with his fellow officers. Rosebrock Supplemental Affidavit, ¶¶ 5-7.

*Central States, Southeast and Southwest Areas Pension Fund v. Kroger Co.,* 226 F.3d 903, 911 (7th Cir. 2000). Under normal circumstances, a court does not even consider extrinsic evidence unless and until an ambiguity is found, *see id.,* and here the face of the CBA displays no ambiguity. Though a party can show that an ambiguity exists by providing extrinsic evidence that shows that, in practice, a contract means something different than its plain language, *see id.* at 913 n.3; *Mathews v. Sears Pension Plan,* 144 F.3d 461, 468 (7th Cir. 1998), the affidavit submitted by the City does not qualify as such "course of dealing" evidence. It gives no indication of how the CBA has been applied or interpreted in the past, but instead merely offers one person's reading of the agreement. *See Mathews,* 144 F.3d at 867 (to establish ambiguity based on course of dealing, extrinsic evidence must be objective; it cannot depend on self-serving testimony from an interested party). The unsupported conclusions of Commander Rosebrock thus fail to provide evidence of an ambiguity in the terms of the CBA, which plainly indicate that Section 9.2 was not available to Murphy after the Pension Board found him not to be disabled.

For these reasons, the Court concludes that the CPD's failure to offer Murphy the opportunity to prove his fitness for reinstatement, or to alternatively return Murphy's case to the Pension Board for payment of benefits, violated his due process rights.

This, however, is not the end of the story. To succeed on his claim, Murphy must still show that the City, the only defendant named in the case, is liable for the due process violation. In actions under 42 U.S.C. §1983, a municipal entity like the City may be held liable only if the alleged constitutional deprivation was caused by (1) an express policy of the municipality; (2) a widespread practice that, although not contained in any express policy, is so permanent and well settled that it constitutes a policy with the force of law; or (3) a municipal

official with final policymaking authority. *E.g., Monell v. Department of Social Services,* 436 U.S. 658 (1978); *McTigue v. City of Chicago,* 60 F.3d 381, 382 (7th Cir. 1995). Murphy argues that the City has a policy that precludes hearings for officers declared unfit by the CPD but found not disabled by the Pension Board. Alternatively, Murphy asserts that Lieutenant Powers of the Personnel Division of the CPD, Commander Stevens, Director of the Personnel Division of the CPD, and Commander Minogue, all of whom played a role in the decision to place Murphy on medical leave, were officials with "final policymaking authority." Plaintiff's Response to Defendant's Motion for Summary Judgment at 6-7.

The determination of whether a municipal employee is a final policymaker is one of local law. *See Auriemma v. Rice,* 957 F.2d 397, 400-01 (7th Cir. 1992). Murphy has cited no cases to suggest that lieutenants and commanders involved in personnel decisions for the CPD have the final policymaking authority for the department; further, Murphy has alleged nothing more than that these individuals followed certain procedures in his case. As "[t]he discretion to make final decisions to carry out the policies of a local law enforcement entity does not equate to policymaking authority," *Sarantakis v. Village of Winthrop Harbor,* 969 F. Supp. 1095, 1106 (N.D. Ill. 1997) (quoting *Eversole v. Steele,* 59 F.3d 710, 716 (7th Cir. 1995)), Murphy cannot proceed on this basis.

Murphy also contends that the City has a policy of precluding hearings for officers found unfit by the CPD but then found not disabled by the Pension Board. The City argues that no such policy exists. But if, as Murphy contends, no procedure existed for an officer in the situation in which he found himself, the absence of a procedure could be considered a "policy" of the City. On the current record, the Court cannot determine what exactly constitutes the CPD's

policies (or lack thereof). What we can say is that neither the City nor Murphy has demonstrated

that there are no genuine issues of fact on this issue; thus, summary judgment is inappropriate.

Although we have found that Murphy's due process rights were violated, it remains to be seen

whether the City is liable for that violation.

We turn finally to Murphy's claim that the City also violated his due process

rights because he received "double punishment" for offenses that he committed against fellow

officers. As an initial matter, we do not agree that Murphy's cited case, *Rochon v. Rodriguez*,

293 Ill. App. 3d 952, 689 N.E.2d 288 (1997), stands for the proposition that double punishment,

if it exists, implicates constitutional due process rights. But even if it did, we do not agree that

Murphy was subjected to double punishment for the same offense.

On March 1, 2000, the CPD filed charges against Murphy for violating CPD rules

that prohibit, among other things, unjustified verbal or physical altercations with others while on

or off duty. The CPD sought to discharge Murphy based on evidence that he had used racial

slurs against a number of fellow officers and physically assaulted one of the officers. As a result

of these charges, Murphy was given a five-day hearing before the Police Board, which ultimately

found Murphy guilty of the charges and recommended that Murphy be suspended for ten days.

(The City has advised us that the Police Board recently found that there was cause for Murphy's

separation from the CPD).

Murphy argues that both the ten-day suspension and the decision to place him on

medical leave were based on the "exact same allegations" of misconduct toward other officers

and therefore the two actions constitute double punishment for the same offense. *See* Plaintiff's

Memorandum in Support of Summary Judgment at 15. In support of his argument, Murphy

offers evidence that Commander Minogue recommended medical leave based on Murphy's disciplinary history. However, Murphy misses the point of Commander Minogue's recommendation for medical leave. Regardless of whether the recommendation was based on the same conduct that lead to the ten-day suspension, the purposes of the two actions are markedly different. The purpose of the ten-day suspension was to punish him for his unacceptable conduct, but the purpose of the medical leave was to permit the CPD to assess Murphy's emotional and/or psychological fitness for duty and to advance the CPD's interest in ensuring the fitness of its active-duty officers. Thus, rather than being punishment for an offense, the medical evaluation process is a mechanism to ensure that active-duty police officers are fit for the job on an ongoing basis. Accordingly, we grant summary judgment in the City's favor on this claim.

## Conclusion

For the foregoing reasons, defendant City of Chicago's motion for summary judgment [docket item #19] is granted in part and denied in part, and its motion to strike pages of plaintiff's brief is denied. Plaintiff Murphy's motion for summary judgment [docket item #20] is denied. The case is set for a status hearing on May 22, 2002 at 9:30 a.m.

Dated: May 13, 2002

MATTHEW F. KENNELLY
United States District Judge